UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 22-CR-226 (NEB/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ARTAB ANAB AWAD,<br><br>　　　　　Defendant. | **GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR DETENTION** |

The United States of America, by Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorney Matthew S. Ebert submits this memorandum in support of its motion for detention of defendant Artab Anab Awad. As set forth below, the government respectfully submits that no conditions of release can ensure the public's safety, or Ms. Awad's appearance at court proceedings, in light of Ms. Awad's record and characteristics, which includes, among other things, violating on a daily basis for almost one year the pretrial release conditions already imposed upon her in another federal fraud case pending in the District of Minnesota, *United States v. Awad*, 21-CR-56 (PAM/ECW).

**I.　BACKGROUND**

　　A.　*Awad's Pending Healthcare Fraud Charges and Conditions of Release*

On March 17, 2021, Ms. Awad made her initial appearance in *United States v. Awad*, 21-CR-56(10) (PAM/ECW), which charged her with conspiracy to defraud the Medicaid program from September 2014 through September 2017. (21-cr-56; Dkts. 8, 65.) The alleged scheme involved mental health practitioners and interpreters

billing Minnesota Medicaid for services that were never performed. Specifically, during the relevant time frame, Ms. Awad worked as an interpreter at entities approved to bill Minnesota Medicaid for interpretation services provided to Medicaid beneficiaries. In this role, Ms. Awad conspired with mental health practitioners at Minnesota Multicultural Counseling Clinic to prepare, sign, and submit falsified reimbursements for adult rehabilitative mental health appointments that never occurred. These falsified claims—among other issues—often overlapped with each other or directly conflicted with Ms. Awad's other work as a personal care assistance. During the scheme, Minnesota Medicaid paid out over $95,000 on Ms. Awad's knowingly fraudulent submissions and Ms. Awad, in turn, pocketed her share of the profits.

On March 17, 2021, given the nature of the charges, the court placed Ms. Awad on numerous conditions of pretrial release. (21-cr-56; Dkt. 50.) Those conditions explicitly included that Ms. Awad not violate any federal, state, or local law while on release. (*Id.*)

B. *Violations of Pretrial Release Conditions*

On November 28, 2021, Hennepin County issued a harassment restraining order against Ms. Awad. (21-CR-56, Dkt. 263.) On December 21, 2021, Ms. Awad violated the restraining order by accosting the victim at a local mall, which led Hennepin County to file charges against Ms. Awad on February 4, 2022, for assault and disorderly conduct. (*Id.*) Because Ms. Awad failed to appear on a summons,

Hennepin County issued a bench warrant for her arrest. Ms. Awad ultimately was released on conditions and the case remains pending.

On March 14, 2022, United States Probation filed a Petition for Action on Conditions of Pretrial Release. (Dkt. 263.) The Petition detailed Ms. Awad's new criminal conduct in Hennepin County. In response, the Court placed Ms. Awad on supervised pretrial release, imposed additional reporting requirements, and required she complied with the active Hennepin County matters.

### C. *Awad's September 2022 Charges Involving Defrauding the Federal Child Nutrition Program*

Despite the pretrial release conditions in 21-CR-56 (PAM/ECW), in which Ms. Awad was ordered to remain law abiding, Ms. Awad nonetheless also executed an allegedly massive and brazen scheme to defraud the Federal Child Nutrition Program that provided free meals to children. Specifically, on September 20, 2022, Ms. Awad was arrested on the Indictment filed against her in *United States v. Salad, et. Al.*, 22-cr-226 (NEB/TNL) for her role in the so-called "Feeding Our Future" fraud scheme. As alleged in the Indictment, beginning in April 2020 and continuing into 2022, Ms. Awad participated with others in a $25 million scheme to defraud the Federal Child Nutrition Program. Much of her participation in this scheme occurred *while* Ms. Awad was on pretrial release in her health care fraud case in 21-CR-56.[1] As alleged

---

[1] In *United States v. Awad*, 21-CR-56(10) (PAM/ECW), the government filed a motion on September 22, 2022, requesting that Ms. Awad's pretrial release be immediately revoked and that she be detained pending trial. (21-cr-56; Dkt. 395.) Moreover, the government anticipates that United States Probation and Pretrial Services will soon be filing a formal Petition to revoke Awad's pretrial release in 21-CR-56 (PAM/ECW).

3

in the Indictment in this (her latest fraud case), Ms. Awad caused the submission of more than $11 million in reimbursement claims for approximately 3.8 million meals she purportedly provided to needy children.

More specifically, as alleged in the Indictment, it was part of her scheme to defraud that Ms. Awad caused the submission of fraudulent meal counts, attendance rosters, and invoices in order to receive reimbursement funds fraudulently from the Federal Child Nutrition Program. For instance, one of Ms. Awad's Minneapolis sites alone fraudulently claimed to have served more than 1.5 million meals to children from just January 2021 to April 2021, which amounts to approximately 12,600 meals to children daily. In reality, as alleged in the Indictment, Ms. Awad's operations at that location served a fraction of the meal amounts claimed. Moreover, despite Ms. Awad's claims, the supposed food vendor for Ms. Awad's location, in fact, did not provide the food during that time claimed through Ms. Awad's Multiple Community Services. Such conduct occurred squarely while Ms. Awad was on pretrial release in 21-cr-56 when she was explicitly prohibited from violating any federal, state, or local law while on release.

In addition, as alleged in the Indictment, Ms. Awad caused the submission of fake attendance rosters and invoices for "Golden Meadows," which was a Multiple Community Services site in Faribault. More specifically, the Indictment alleges Ms. Awad's Multiple Community Services submitted to Sponsor A an attendance roster listing the names of approximately 2,010 children who purportedly received meals at Ms. Awad's Faribault site in approximately December 2021. However, not one of the

names matched the names of students who actually attended school in the Faribault Public School District at that time. Moreover, as alleged in the Indictment, Ms. Awad's Multiple Community Services submitted fake invoices to Sponsor A for four of Ms. Awad's sites (including Faribault) for approximately $259,780 for food purportedly served in January 2022 by Ms. Awad's sites. However, those invoices were fake and no food was supplied to Ms. Awad by that vendor, all as alleged in the Indictment.

The Indictment further alleges that Ms. Awad received fraudulent proceeds from the Federal Child Nutrition Program into accounts that she controlled, which included, among other deposits, receiving approximately $3.7 million directly from Sponsor A, approximately $3 million from a purported vendor that, in fact, provided no food to AWAD, and approximately $199,000 from SALAD, who was ostensibly one of AWAD's other food vendors. Thereafter, as alleged in the Indictment, Ms. Awad repeatedly withdrew fraud proceeds to benefit herself and others, including withdrawing $308,000 for herself, withdrawing $400,000 to another of Ms. Awad's businesses, and disbursing hundreds of thousands in fraudulent proceeds to other individuals, which included her family members. Again, to be clear, this is all conduct that Ms. Awad engaged in systematically *while* she was on pretrial release 21-CR-56.

## II. ARGUMENT

A defendant charged with an offense may be released on personal recognizance, released on conditions, temporarily detained to permit revocation of conditional release, or detained. 18 U.S.C. §§ 3142(a), (e). Detention is appropriate

only where there are no conditions of pretrial release that will reasonably assure the appearance of the defendant and the safety of the community. *Id*. § 3142(e). In determining whether there are satisfactory release conditions, the court considers: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id*. § 3142(g). Dangerousness to the community is established under a clear and convincing standard, while risk of flight is established by a preponderance of the evidence. 18 U.S.C. § 3142(f); *United States v. Kisling*, 334 F. 3d 734, 735 (8th Cir. 2003).

### A. Awad's Detention is Necessary to Protect the Public.

Ms. Awad's track record demonstrates that she will defraud for her own financial gain and that she has no compunction about committing new crimes, no matter what conditions might be imposed upon her by a court. Respectfully, there are no conditions that can be presented to the Court that will ensure the safety of the public if she were to be released.

### 1. Nature and Circumstances of the Charged Offense Warrant Detention

First, as to the nature and circumstances of the charged offense, Ms. Awad is alleged to have pilfered a vast sum of money from the Federal Child Nutrition Program. What is perhaps most troubling about the nature and circumstances of the charged offense is that Ms. Awad allegedly executed her fraud scheme every day for nearly a year while she was under the pretrial release conditions in 21-CR-56

6

effective March 17, 2021. Ms. Awad has demonstrated that pretrial release conditions will not protect the public because they mean nothing to her. On that basis, she should be detained.

2. <u>Awad's History and Characteristics Warrant Detention</u>

Every day since March 17, 2021, through 2022, Ms. Awad violated a court order to commit this alleged fraud. Given that Ms. Awad has allegedly committed additional ongoing fraud, this time against the Federal Child Nutrition Program, her history and characteristics warrant detention. Ms. Awad is a serial fraudster, as her record makes glaringly obvious. She simply cannot be trusted on pretrial release because she refuses to follow the law or release conditions and so detention is warranted.

3. <u>Danger to the Community that would be Posed by Awad's Release</u>

Finally, Ms. Awad's detention is necessary because she poses an economic/financial danger to the community, as evidenced by her charged conduct here as well as her prior record of fraud. The legislative history of the Bail Reform Act makes clear that Congress intended that the "safety of the community" concern in § 3142 was expected to be construed as broader than merely danger of harm involving physical violence. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3195) ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might

engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").

The case law discussing § 3142 and economic danger—which spans several decades as well as several circuits—makes additionally clear that economic danger can provide, as is the case here with Awad, a basis for detention. For example, in the case of *United States v. Madoff*, the District Court for the Southern District of New York faced the issue of pretrial detention for the well-publicized defendant and looked to both case law and legislative history for guidance concerning the treatment of "danger" under the Bail Reform Act. 586 F.Supp.2d 240, 251–53 (S.D.N.Y. 2009) (citations omitted). After an extensive review of the relevant authority, the court recognized "there is jurisprudence to support the consideration of economic harm in the context of detention to protect the safety of the community." *Id*. at 253. *See United States v. Farmer*, No. 4:12-CR-0026, 2012 WL 5331233, at *3 (S.D. Ind. 2012) ("Based on the nature and circumstances of the offense and [defendant's] history of committing financial crimes, even while on court ordered supervision, the Court finds the Government has met its burden and has shown by clear and convincing evidence that [defendant] poses a serious risk of continuing economic damage"). *See also United States v. Walker*, 13-MJ-00544-TNL (D. Minn.) (Dkt. 13) at 11-16 (collecting cases where "Courts have construed the statute [Section 3142] to find that protection of the community from economic harm is a valid objective of bail conditions"; and

ordering that Walker, a fraud defendant, be detained because he posed a continuing economic danger to the community).[2]

Here, the danger of economic harm that Ms. Awad presents to the community is substantial. She has continued to defraud for years even doing so when on federal pretrial release. There is absolutely no evidence that court ordered pretrial release conditions hinder Ms. Awad's behavior whatsoever. On this collective basis, the government respectfully submits that no condition will ensure the safety of the community and, as such, Ms. Awad's detention is warranted.

### B. Awad's Detention is Also Necessary to Assure Reappearance.

Based on Ms. Awad's history (namely, her alleged violation of prior pretrial release conditions daily and systematically since March 2021), the government also submits she poses a substantial risk of nonappearance for future court proceedings.

In deciding whether to detain a defendant as a flight risk, courts may consider whether she will continue to engage in economic crimes while on pretrial release. *See United States v. Giordano*, 370 F.Supp.2d 1256, 1269–70 (S.D.Fla. 2005); *see also United States v. Bailynson*, 2018 WL 3323210 at * (S.D.Fla 2018) ("While a finding of economic danger to the community is not a stand-alone factor supporting detention . . . , it may still be considered when determining whether Defendant poses a

---

[2] *See also United States v. Reynolds*, 956 F.2d 192, 93 (9th Cir. 1992) (the Ninth Circuit denied the defendant's motion for bail pending appeal because the defendant had failed to show by clear and convincing evidence that he did not constitute an economic danger to the community, and holding that "danger may, at least in some cases, encompass pecuniary or economic harm." *Id.* at 192–93 (citing *United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir.1979) (danger not limited to physical harm).

substantial or serious risk of flight or nonappearance.") (citing *Giordano*, 370 F.Supp.2d at 1270).

In *United States v. Possino*, the defendant was charged with financial crimes (including, as here, wire fraud), a charge which, like Ms. Awad's pending case, involved crimes that allegedly occurred while the defendant was on pretrial release from a prior federal case. *United States v. Possino*, 2013 WL 1415108 at *2 (C.D. Cal. 2013). Specifically, the court noted that the defendant in *Possino* "over a period of several months while on pretrial release before his sentencing and commitment for the [previously charged] offenses . . . . allegedly participated in the market manipulation scheme charged in the current indictment," including "plac[ing] trades in a market manipulation campaign on the same day he entered his guilty plea." *Id.* In light of that defendant's "apparent massive violation of his pretrial release," among other factors (including the strength of the evidence and the potential penalties that might result at sentencing), the court in *Possino* concluded as follows as part of its decision to detain:

> Indeed, a factor in considering the history and characteristics of a person is set forth in Section 3412(g)(3)B), which asks whether a defendant, at the time the offenses occurred, was "on probation, parole or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State or local law."
>
> As already observed, [defendant] was on pretrial release, in prison, and on supervised release when the alleged offenses occurred. Although the Court views Section 3412(g)(3) as primarily relevant to the danger to the community criterion for detention, the fact that Defendant committed the alleged offenses while on pretrial release, in prison, and on supervised release also are relevant to flight risk. <u>A defendant who already violated his pretrial release with such impunity would not hesitate to do it again by fleeing</u>.

10

*Id.* at 4, 6 (Emphasis added.).

Here, Ms. Awad has likewise shown herself to have violated her previous pretrial release conditions with impunity given her alleged participation in the scheme to defraud the Federal Child Nutrition Program, which is highly relevant to her flight risk. Indeed, someone like Ms. Awad, who has so egregiously violated her pretrial release by participating in this new alleged fraud would not hesitate to violate her release again by, among other misconduct, fleeing. As such, the government respectfully submits that detention of Ms. Awad is appropriate to ensure her appearance at future court proceedings.

## CONCLUSION

For the abovementioned reasons, the government respectfully requests the Court detain Ms. Awad pending conclusion of the case.

Dated: September 22, 2022             Respectfully submitted,

                                      ANDREW M. LUGER
                                      United States Attorney

                                By:   *Matthew S. Ebert*
                                      MATTHEW S. EBERT (0386655)
                                      Assistant United States Attorney
                                      300 South 4th Street, Suite 600
                                      Minneapolis, MN 55415