UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 22-cr-226 (NEB/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER OF DETENTION |
| | ) |
| ANAB ARTAN AWAD, | ) |
| | ) |
| Defendant. | |

On September 23, 2022, this matter came before the Court for an arraignment and detention hearing. Ms. Awad appeared in custody and was represented by Eric A. Rice. The United States was represented by Assistant United States Attorney Matthew S. Ebert. The Court arraigned Ms. Awad pursuant to Rule 10, Fed. R. Crim. P., and Ms. Awad entered pleas of not guilty to those counts of the Indictment in which she is charged. As to detention, the United States introduced, without objection, Government Exhibits 1-5, proffered information regarding the indicted offense, and argued from the bond report. The Court also heard argument from defense counsel. After considering the bond report, the exhibits and information introduced by the United States, and the arguments of counsel, the Court concluded that no condition or combination of conditions would reasonably assure Ms. Awad's appearance at future proceedings or mitigate the risk of danger she poses to the community. Accordingly, the Court granted the motion of the United States to detain Ms. Awad pending trial.

## FINDINGS OF FACT

1. The facts and circumstances of the crimes charged against Ms. Awad are serious. On September 13, 2022, a grand jury in this District charged Ms. Awad by indictment with wire fraud, conspiracy to commit money laundering, and money laundering for allegedly executing a scheme to defraud a federal child nutrition program out of at least $25 million. The Indictment alleges that, beginning in April 2020 and continuing into 2022, Ms. Awad and her codefendants fraudulently obtained and laundered millions of dollars in federal money that was intended to ensure underserved children received adequate nutrition during the COVID-19 pandemic. According to the Indictment, instead of using this funding to provide meals to needy children, the defendants enriched themselves.

2. Specific to Ms. Awad, the Indictment alleges that she reinstated a formerly defunct business entity to purportedly manage distribution sites that would provide meals for needy children. Ms. Awad allegedly thereafter submitted more than $11 million in reimbursement claims for approximately 3.8 million meals, only a fraction of which were provided to needy children. Instead, the Indictment alleges that Ms. Awad caused the submission of fraudulent meal counts, attendance rosters, and invoices to receive fraudulent reimbursement funds from the Federal Child Nutrition Program. For example, between January and April 2021, one of Ms. Awad's purported Minneapolis sites claimed to have served more than 1.5 million meals to children, which would equate to approximately 12,600 daily meals. In reality, the Indictment alleges, only a fraction of those meals were served. According

2

to the Indictment, Ms. Awad received over $6 million in the form of deposits into bank accounts she controlled. Ms. Awad thereafter allegedly withdrew over $300,000 for herself, $400,000 for the benefit of her other businesses, and hundreds of thousands of dollars that she distributed to other individuals, including members of her family. The most serious charges of the indictment carry a maximum sentence of 20-years' imprisonment.

3. Ms. Awad allegedly committed this new offense conduct while on pretrial release on a separate federal indictment. *See* Gov. Ex. 1. On March 17, 2021, Ms. Awad made an initial appearance in *United States v. Awad, et. al.*, 21-cr-56, which charged Ms. Awad with conspiracy to defraud the Medicaid Program. According to that Indictment, between September 2014 and September 2017, Ms. Awad and her co-conspirators billed Minnesota Medicaid for mental health services and the related interpretation of those services that never occurred. As an interpreter, Ms. Awad allegedly conspired with mental health practitioners at Minnesota Multicultural Counseling Clinic to prepare, sign, and submit falsified reimbursement requests for adult rehabilitative mental health appointments that never occurred. The United States has alleged that Minnesota Medicaid paid out over $95,000 on Ms. Awad's knowingly fraudulent submissions for interpretation services and that Ms. Awad pocketed a share of those ill-gotten gains. The Court in 21-cr-56 released Ms. Awad following her initial appearance, subject to several conditions. Gov. Ex. 1. These conditions included a requirement that Ms. Awad not violate any state, federal, or local law.

4. On March 14, 2022, United States Probation and Pretrial Services filed a Petition for Action on Conditions of Pretrial Release against Ms. Awad in 21-cr-56. *See* Gov. Ex. 2. The Petition alleged that Ms. Awad had been charged in Hennepin County with assault, disorderly conduct, and violating a harassment restraining order. The details of the underlying incident are troubling. Ms. Awad allegedly physically assaulted an individual and—despite a restraining order—subsequently texted the purported victim that the victim was a "dead person" who was being watched by Ms. Awad's "tribe." The Court responded by modifying Ms. Awad's conditions of pretrial release by placing her on supervised release, imposing additional reporting requirements, and requiring that she comply with the pending matters in Hennepin County. The Hennepin County matters remain pending and set for trial.

5. According to Ms. Awad's bond report, she has been a longtime resident of Minnesota and has significant ties to the community. However, she has been unemployed for 6 months and has an estimated monthly cash flow of $50. The United States raised significant concerns regarding Ms. Awad's financial assertions. Notably, numerous checks recently written by Ms. Awad for vast sums of money were introduced into evidence at the detention hearing. *See* Gov. Exs. 3-5. This included checks for hundreds of thousands of dollars that Ms. Awad wrote to members of her family and other individuals, including payments she made to others after the federal law enforcement executed search warrants related to this fraud scheme. The

4

Indictment alleges that Ms. Awad received over $700,000 from the alleged fraud scheme and that she purchased a 2021 Dodge Ram 1500 pickup via a codefendant.

6. Other than the two federal indictments described above, Ms. Awad does not have a significant criminal history. However, she has been convicted of 36 misdemeanor driving convictions and has either failed to appear or pay the required fine on 26 occasions. She also recently failed to appear in Hennepin County in February 2022, which necessitated a bench warrant for her arrest.

## **CONCLUSIONS OF LAW**

7. A defendant charged with an offense may be released on personal recognizance, released on conditions, temporarily detained to permit revocation of conditional release, or detained. 18 U.S.C. §§ 3142(a), (e). Detention is appropriate only when there are no conditions of pretrial release that will reasonably assure the appearance of the defendant and the safety of the community. *Id.* § 3142(e). The United States must establish by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the person. *Id.*; *see also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). The United States must establish by clear and convincing evidence that the person is a danger to the community. *Id.* The potential for danger to the community is broadly construed and includes the prospect of economic harm. *See, e.g.*, *United States v. Walker*, 13-mj-544 (D. Minn.), Dkt. 13 at 12-14 (collecting cases recognizing the danger of economic harm as relevant consideration to release).

5

8. The Indictment alleges that Ms. Awad was involved in a scheme that generated over $25 million in alleged fraud losses. Although the United States proffered that it has undertaken aggressive efforts to seize proceeds of the alleged fraud, significant assets remain unrecovered. The United States introduced evidence that Ms. Awad wrote checks for hundreds of thousands of dollars during a time that directly correlates with the alleged fraud scheme. *See* Gov. Exs. 3-5. There is a noted discrepancy between Ms. Awad's self-reported financial circumstances in the bond report and the writing of these checks. Ms. Awad also engaged in a series of substantial financial transactions even after the investigation became overt, which indicates a potential desire to redistribute or hide assets.

9. Ms. Awad correctly notes that she traveled internationally and returned to Minnesota during her period of pretrial release in 21-cr-56. However, Ms. Awad's return to Minnesota was during the alleged fraud scheme when Ms. Awad allegedly had a strong financial motivation to return. This is in stark contrast to the present. Ms. Awad reports that she is unemployed, and she now faces not one but two separate federal criminal indictments. The Court also is concerned that Ms. Awad has a history of failing to appear for court or pay court-imposed fines.

10. The Court therefore concludes that Ms. Awad has both the means and incentive to flee. Accordingly, a preponderance of the evidence establishes that no condition or combination of conditions will reasonably assure Ms. Awad's appearance at future proceedings.

11. Moreover, the Court concludes that Ms. Awad poses a risk of danger to the community. A grand jury returned the Indictment in this matter, which means it found probable cause that Ms. Awad was involved in an intricate, fraudulent scheme that involved enormous sums of money. The Court cannot ignore the fact that Ms. Awad allegedly participated in this scheme while on pretrial release in 21-cr-56, another matter in which a grand jury found probable cause that Ms. Awad had participated in a separate conspiracy to submit fraudulent reimbursements and reap public funds. Notably, Ms. Awad's pretrial release in that matter already had required modification to active supervision following her alleged assault of another individual. The Indictment in this matter, however, alleges that Ms. Awad was entirely undeterred by these realities. Instead, the present Indictment alleges that Ms. Awad perpetrated this new fraudulent scheme on a near daily basis while under modified conditions of federal pretrial release. On this record, Ms. Awad's release poses a clear financial danger to the taxpayers and the public at large. Accordingly, the Court cannot fashion any condition or combination of conditions of release that are likely to assure the safety of the community.

## CONCLUSION

Accordingly, based on all the files, records, and proceedings, **IT IS HEREBY ORDERED** that:

1. The motion of the United States for detention pending trial, (Dkt. 27), is **GRANTED**;

2. Ms. Awad is committed to the custody of the Attorney General for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. Ms. Awqad shall be afforded reasonable opportunity to consult privately with counsel; and

4. Upon Order of the Court or request by the United States Attorney, the person in charge of the corrections facility in which Ms. Awad is confined shall deliver her to the United States Marshal for the purpose of appearance in connection with further court proceedings.

Dated: September 27, 2022                    *s/John F. Docherty*
                                                                       Hon. John F. Docherty
                                                                       United States Magistrate Judge