UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Nos. 22-226(3) (NEB/TNL) and
21-56(10) (ECT/ECW)

UNITED STATES OF AMERICA,

        Plaintiff,                 **PLEA AGREEMENT AND SENTENCING STIPULATIONS**

v.

ANAB ARTAN AWAD,

        Defendant.

The United States of America and defendant Anab Artan Awad ("defendant"), and her attorneys, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, agree to resolve these cases on the terms and conditions that follow. This Plea Agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This Plea Agreement does not bind any other United States Attorney's Office or any other federal or state agency. The parties to this Agreement have agreed upon the following:

    1.    **Charges in Both Cases.** By this Agreement, defendant agrees to plead guilty to: (1) Count Eight of the Indictment in case number 22-226(3) (NEB/TNL), which charges the defendant with wire fraud, in violation of 18 U.S.C. § 1343; and (2) Count One of the Indictment in case number 21-56(10) (ECT/ECW), which charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Defendant has read the charges against her contained in the Indictments in each case, and those charges have been fully explained to her by her respective attorneys. The defendant fully understands the nature and elements of the crimes with which

1

she has been charged in both cases. At the time of sentencing, the government agrees to move to dismiss the remaining counts in both Indictments.

2.   **Factual Basis.** The defendant is pleading guilty because she is in fact guilty of Count Eight of the Indictment in case number 22-226(3) (NEB/TNL) and of Count One of the Indictment in case number 21-56(10) (ECT/ECW). In pleading guilty, the defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

*Case Number 22-226(3) (NEB/TNL)*

From September 2020 through January 2022, defendant knowingly participated with others in a fraudulent scheme to obtain and misappropriate millions of dollars in Federal Child Nutrition Program funds that were intended as reimbursements for the cost of serving meals to children.

Through her business, Multiple Community Services, MCS ("Multiple Community Services"), defendant controlled Federal Child Nutrition Program sites in Osseo, Minneapolis, and Faribault, Minnesota, under the sponsorship of Sponsor A. Sponsor A was a Minnesota non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. As a food site operator, defendant was responsible for serving actual food to children through the Federal Child Nutrition Program.

However, in furtherance of the scheme, defendant received Federal Child Nutrition Program funds based upon fraudulent information, such as falsified

2

invoices and meal count records with substantially inflated figures. Moreover, defendant and others received Federal Child Nutrition Program funds that substantially exceeded the amounts of food that she either purchased or served to children. Defendant also failed to purchase or acquire the types of food that was required under the Federal Child Nutrition Program, such as fruit.

As further part of the scheme, one of defendant's Minneapolis sites fraudulently claimed to have served more than 1.5 million meals to children from January 2021 to April 2021, which amounts to approximately 12,600 meals to children daily. In reality, defendant's operations at that location served a fraction of the meal amounts claimed. Also, despite defendant's claims, the purported food vendor for defendant's location, in fact, did not provide food during the time period claimed. In addition, none of the names on the attendance rosters submitted for "Golden Meadows," which was one of defendant's food sites in Faribault, matched the names of actual children enrolled in the Faribault School District.

Due to defendant's false and fraudulent submissions, Sponsor A remitted reimbursement payments to defendant via checks, which defendant deposited into bank accounts she controlled. The defendant admits that the deposit of these reimbursement payments constitutes an interstate wiring for the purpose of executing the scheme in violation of Title 18, United States Code, Sections 1343. For example, as alleged in Count Eight, on or about January 18, 2022, defendant deposited a reimbursement check from Sponsor A in the amount of $253,935.36 for a Multiple Community Services site in Faribault.

3

It was further part of the scheme to defraud that defendant received fraudulent proceeds from the Federal Child Nutrition Program into accounts that she controlled, which included, among other deposits, approximately $3.7 million directly from Sponsor A, approximately $3 million from a purported vendor that, in fact, provided no food to defendant, and approximately $199,000 from Haji Osman Salad, who was ostensibly one of defendant's other food vendors.

In total, defendant fraudulently claimed $11,237,106.41 in Federal Child Nutrition Program funds, of which the Minnesota Department of Education paid out $9,668,384.09. In all, defendant and her purported vendors obtained $9,333,858.24 in fraud proceeds for herself and others.

### *Case Number 21-56(10) (ECT/ECW)*

From at least in or about April 2015 through in or about July 2016, defendant worked as an interpreter for A-Z Friendly Languages ("A-Z") and Itasca Interpretation Services ("Itasca"). A-Z and Itasca were approved providers that billed services to the Minnesota Medicaid program for interpreter services provided to Medicaid beneficiaries by its interpreters. Through A-Z and Itasca, defendant signed billing forms that she knew were subsequently submitted for billing to the Minnesota Medicaid program for interpretation services that she purportedly provided in the State of Minnesota to clients of Minnesota Multicultural Counseling Clinic ("MMCC"). MMCC was a mental health clinic with locations in St. Paul, Brooklyn Park, and Burnsville, Minnesota.

In agreement with her co-conspirators, defendant allowed the Minnesota Medicaid program to be billed for mental health services and related interpretation services that were not actually rendered to Medicaid beneficiaries, in violation of Title 18, United States Code, Section 1349. Defendant signed and subsequently allowed to be submitted falsified interpreter service verification forms for interpretation services purportedly provided during MMCC's appointments. The claims for reimbursement for interpretation services that defendant knowingly allowed to be submitted were false and fraudulent because she did not actually render any interpretation services.

Due to the defendant's false and fraudulent submissions, the Minnesota Medicaid program remitted payment to A-Z and Itasca via electronic funds transfer, and she was then paid for interpretation services that were not actually rendered. The defendant admits that the payments to A-Z and Itasca via electronic funds transfer also constitutes an interstate wiring for the purpose of executing the scheme in violation of Title 18, United States Code, Sections 1343 and 1349. For example, on or about May 27, 2016, defendant facilitated and permitted the submission of a false and fraudulent claim for interpretation services for patient A.A. to UCare for services that defendant did not actually render on April 28, 2016. In all, defendant's fraudulent conduct caused a loss to the Minnesota Medicaid program of $99,154.

Finally, defendant acknowledges that co-conspirator Abdirahman Fuad Yonis submitted claims for providing mental health services to defendant at MMCC. Defendant never received mental health services as a client of MMCC and any claims

for mental health services submitted with defendant listed as a client are false and fraudulent submissions.

3. **Waiver of Pretrial Motions.** The defendant understands and agrees that she has certain rights to file pre-trial motions in both cases. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in both cases. The defendant agrees that, by pleading guilty, she is withdrawing any motions previously filed in either case.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that she has the right to go to trial in both cases. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty in both cases and, if she does so, she would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final

admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty in both cases without a trial.

5. **Additional Consequences**. The defendant understands that as a result of her convictions, she could experience additional consequences, such as the loss of the right to carry firearms, the loss of certain federal benefits, the right to vote, and the right to hold public office.

6. **Statutory Penalties**. Defendant understands that Count Eight of the Indictment in case number 22-226(3) (NEB/TNL) (wire fraud) and Count One in case number 21-56(10) (ECT/ECW) (conspiracy to commit wire fraud) each carry the following maximum statutory penalties:

   a. 20 years in prison;
   b. supervised release term of 3 years;
   c. a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater; and
   d. a mandatory special assessment of $100.00.

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

   a. <u>Grouping</u>. Both the wire fraud and wire fraud conspiracy counts are grouped together. (U.S.S.G. § 3D1.2(d)).

   b. <u>Base Offense Level</u>. Because both counts have a statutory maximum term of imprisonment of 20 years or more, the parties

7

|     |     |
| --- | --- |
|     | agree that the base offense level for wire fraud and wire fraud conspiracy is 7. U.S.S.G. § 2B1.1(a)(1). |
| c.  | <u>Specific Offense Characteristics</u>. The government contends that the offense level should be increased by 20 levels because the combined loss in both cases is more than $9,500,000, but not more than $25,000,000. U.S.S.G. § 2B1.1(b)(1)(K). The defendant reserves the right to argue that the offense level should be increased by 18 levels because the combined loss in both cases is more than $3,500,000, but not more than $9,500,000. U.S.S.G. § 2B1.1(b)(1)(J). The parties agree that no other specific offense adjustments apply. |
| d.  | <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw her guilty plea after it is entered. |
| e.  | <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands |

       that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

    f.    <u>Guidelines Range</u>. If the adjusted offense level is 24, and the criminal history category is I, the Sentencing Guidelines range is 51 to 63 months of imprisonment. However, if the adjusted offense level is 22, and the criminal history category is I, the Sentencing Guidelines range is 41 to 51 months of imprisonment.

    g.    <u>Fine Range</u>. If the adjusted offense level is 24, the Sentencing Guidelines fine range is $20,000 to $200,000. U.S.S.G. § 5E1.2(c)(3). However, if the adjusted offense level is 22, the Sentencing Guidelines fine range is $15,000 to $150,000. U.S.S.G. § 5E1.2(c)(3).

    h.    <u>Supervised Release</u>. The Sentencing Guidelines call for a term of supervised release of between one and three years for Count 1. U.S.S.G. § 5D1.2(a)(2).

8. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea in either case.

9. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination

regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $200 for both felony counts of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

11. **Revocation of Supervised Release**. The defendant understands that if she were to violate any supervised release condition while on supervised release in either case, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

12. **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crimes. The defendant understands and agrees the Court may order the defendant to make

restitution to any victim of the scheme regardless of whether the victim was named in either of the indictments. In case number 22-226(3) (NEB/TNL), defendant agrees that she owes restitution in the amount of $9,333,858.24. In case number 21-56(10) (ECT/ECW), defendant agrees that she owes restitution in the amount of $99,154.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate her ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, as charged in Count Eight of the indictment in case number 22-226(3) (NEB/TNL).

15. Defendant agrees that the specific property subject to forfeiture in the indictment in case number 22-226(3) (NEB/TNL) includes but is not limited to:

   a. Real property located at 2679 133rd St. W, Rosemount Minnesota, including A.H.'s interest in a Contract for Deed for the purchase of this property; and

   b. a 2021 Dodge Ram 1500, VIN: 1C6SRFHT3MN626173.

(collectively, "the Seized Property").

Defendant admits that the Seized Property is subject to forfeiture because it constitutes or is traceable to the wire fraud scheme, as alleged in the indictment in case number 22-226(3) (NEB/TNL).

16. Defendant consents to the entry of a money judgment forfeiture in the amount of $9,333,858.24, which represents the amount of proceeds from the wire fraud scheme alleged in the indictment in case number 22-226(3) (NEB/TNL). Defendant will be given credit against the forfeiture judgment for the net value of all assets forfeited from her in connection with case number 22-226(3) (NEB/TNL).

17. Defendant agrees that in case number 22-226(3) (NEB/TNL) the United States may, at its option, forfeit the Seized Property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest she may have in the property. Defendant waives all statutory and constitutional defenses to the forfeiture in case number 22-226(3) (NEB/TNL) and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent defendant has sought remission or otherwise challenged the

forfeiture of the above-described property in case number 22-226(3) (NEB/TNL), she withdraws any such challenges.

18. Defendant further agrees that she will not assist any third parties with regard to any claims or petitions that third parties might file in subsequent administrative or judicial forfeiture proceedings for the Seized Property in case number 22-226(3) (NEB/TNL).

19. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 51 months of imprisonment, and an appeal by the government of the substantive reasonableness of a term of imprisonment below 51 months of imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with the defendant's attorney in each case. The defendant understands the rights being waived in each case, and the defendant waives these rights knowingly, intelligently, and voluntarily.

20. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of these cases

under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

## Conclusion

21. This is the entire agreement and understanding between the United States and defendant.

22. Defendant and her attorney in each case acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

23. Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney in each case. Defendant further acknowledges that she understands and voluntarily accepts every term and condition of this Plea Agreement.

ANDREW M. LUGER
United States Attorney

Date: 11-4-2022

BY: MATTHEW S. EBERT
JOSEPH H. THOMPSON
HARRY M. JACOBS
CHELSEA A. WALCKER
JOSEPH S. TEIRAB
Assistant United States Attorneys in Case Number 22-226(3) (NEB/TNL)

Date: 11/4/2022

BY: ANGELA M. MUNOZ
JORDAN L. SING
Assistant United States Attorneys in Case Number 21-56(1) (ECT/ECW)

14

Date: 11/4/22

ANAB ARTAN AWAD
Defendant

Date: 10/4/22

JOSEPH T. DIXON, III
Counsel for Defendant in Case Number
22-226(3) (NEB/TNL)

Date: 11/4/22

JASON STECK
Counsel for Defendant in Case Number
21-56(1) (ECT/ECW)